<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

<table>
<tr><td>

YEIMYAR VENTURA DE BROWN,

    Plaintiff,

    v.

CENTERS LAB NJ LLC,

    Defendant.

</td><td>

No. 25cv13258 (EP) (AME)

**MEMORANDUM ORDER**

</td></tr>
</table>

**PADIN, District Judge.**

*Pro se* Plaintiff Yeimyar Ventura De Brown[1] filed an amended complaint bringing various civil rights claims under the Family and Medical Leave Act, 29 U.S.C. §§ 2601–54 ("FMLA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-e17 ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101–213 ("ADA"), the Pregnancy Workers Fairness Act, 42 U.S.C. §§ 2000gg–gg-6 ("PWFA"), race discrimination under 42 U.S.C. § 1981, and claims for unpaid wages under the Fair Labor Standards Act, 29 U.S.C. §§ 206–19 ("FLSA"), against Defendant Centers Lab NJ LLC ("Centers Lab").[2]  FAC.  Because the Court granted Plaintiff's application to proceed *in forma pauperis*, D.E. 3, the Court must screen the Amended Complaint

---

[1] Plaintiff filed the case as "Yeimyar Ventura De Brown" but discloses in her Complaint that her name is "Yeimi Aracelis Ventura D Brown."  *See* Dkt.; D.E. 4 ("Amended Complaint" or "FAC") at 1.

[2] In her amended complaint, Plaintiff references other individuals, including Nathalia, Román, and John and Jane Does 1–10.  FAC at 17.  However, none of these parties appear within the case caption, nor does Plaintiff consistently list them as defendants within her Amended Complaint. *Compare id.* at 1 (specifying only Centers Lab as a defendant), *with id.* at 17 (identifying Centers Lab, Nathalia, Roman, and John and Jane Does as defendants).  Currently, the Court only considers Centers Lab to be the sole defendant in this matter.

pursuant to 28 U.S.C. § 1915(e)(2)(B).  For the reasons explained below, the Court will permit the Amended Complaint to **PROCEED in part** because Plaintiff pleads plausible claims.  The Court will **DISMISS** Plaintiff's other claims *without prejudice*.

## I.    BACKGROUND

### A.    Factual Background[3]

Centers Lab is a New Jersey business entity with over fifty employees within a seventy-five-mile radius of its Piscataway facility.  FAC at 17.  Plaintiff began working for Centers Lab as a laboratory employee and phlebotomist in January 2023.[4]  *Id.*  Plaintiff took maternity leave in November 2023, after she had worked over 1,250 hours.  *Id.* at 17–18.

While pregnant, Plaintiff developed severe prenatal preeclampsia, high blood pressure, and other medical complications.  *Id.* at 18.  Plaintiff worked night shifts despite repeatedly requesting

---

[3] The facts in this section derive from the Amended Complaint's well-pled factual allegations, which the Court presumes to be true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court notes that Plaintiff's Amended Complaint proceeds in multiple parts, FAC at 1–7, 17–19, 20–108.  Federal Rule of Civil Procedure 8 requires plaintiffs, even those who proceed *pro se*, to provide a short and plain statement of their claims and the facts upon which they rest.  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).  Because the third section of Plaintiff's Amended Complaint (FAC at 20–108) appears to ramble in an unorganized and confusing fashion, the Court will consider only the first two sections of her Amended Complaint.  "[J]udges are not like pigs, hunting for truffles buried [in pleadings]."  *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024) (quoting *Gross v. Cicero*, 619 F.3d 697, 702 (7th Cir. 2010)).  If Plaintiff submits a second amended complaint, she shall take care to organize her claims and the allegations upon which they rest.

[4] In her Amended Complaint, Plaintiff provides conflicting information regarding her start date.  Plaintiff first pleads that her employment start date was January 7, 2023.  FAC at 3.  Later, Plaintiff pleads that she began working at Centers Lab in 2022.  *Id.* at 17.  Given that Plaintiff's eligibility for her Family and Medical Leave Act ("FMLA") claims rests on the specific date she started, it is imperative that this date be made clear to the Court.  Here, the Court will assume that the narrower and more specific of the two times provided—that is, January 7, 2023—was Plaintiff's specific start date.  If Plaintiff files another amended complaint, she must include all material dates in her filing and should explain any discrepancies compared to her prior filings.

a modified schedule or transfer to day shifts because of her pregnancy-related complications. *Id.* Despite those requests, her managers Nathalia and Román did not change her schedule.[5] *Id.* Plaintiff's managers additionally denied her restroom access, which caused her urinary pain, swelling, and worsening preeclampsia symptoms. *Id.* Management also denied Plaintiff's request to change into clean clothing, forcing her to wear soaked or stained laboratory clothing, which humiliated Plaintiff in front of her coworkers. *Id.*

In July 2023, Plaintiff filed a collective internal complaint with several coworkers, alleging discrimination, favoritism exhibited by Nathalia and Román, hostile working conditions, and "denial of basic workplace rights." *Id.* Centers Lab then began terminating all employees who signed or participated in the collective internal complaint. *Id.* Despite labeling these terminations as "layoffs," Centers Lab continued hiring new employees shortly afterward. *Id.*

Plaintiff's child was born via emergency delivery at 37.3 weeks with high sodium levels. *Id.* Centers Lab then granted Plaintiff medically certified leave from November 17, 2023, to May 13, 2024.[6] *Id.* Centers Lab terminated Plaintiff on February 12, 2024, seven months after she participated in the collective internal complaint and while she was on approved maternity leave. *Id.* at 3, 18.

### B.    Procedural History

The Clerk of Court received Plaintiff's IFP application and original complaint on July 10, 2025. D.E. 1 ("Complaint" or "Compl."); D.E. 1-1 ("IFP Application"). On October 7, 2025, this

---

[5] Plaintiff does not disclose the last names of her managers.

[6] In her Amended Complaint, Plaintiff provides conflicting information with respect to when her maternity leave began. Plaintiff first pleads that her leave began on November 16, 2023. FAC at 3. Later, Plaintiff pleads that she was granted leave beginning on November 17, 2023. *Id.* at 18. The Court will assume the narrower of the two times provided—that is, November 17, 2023—was the date on which her maternity leave began.

Court granted Plaintiff's IFP application but dismissed the Complaint without prejudice.  D.E. 3.

Plaintiff later filed the Amended Complaint.  FAC.  The Court construes Plaintiff's Amended

Complaint to bring ten claims against Centers Lab: (1) FMLA interference; (2) FMLA retaliation;

(3) Title VII pregnancy/sex discrimination; (4) ADA disability discrimination; (5) ADA failure to

accommodate; (6) PWFA failure to accommodate; (7) wrongful termination under 42 U.S.C.

§ 1981; (8) hostile work environment; (9) retaliation; and (10) unpaid wages under the FLSA.  *See*

*id.* at 18–19.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 1915, this Court may excuse a litigant from prepayment of fees when

the litigant "establish[es] that he is unable to pay the costs of his suit."  *Walker v. People Express*

*Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989).  However, courts must review an IFP plaintiff's

complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which

relief may be granted, or seeks monetary relief against a defendant who is immune.[7]  28 U.S.C.

§ 1915(e)(2)(B); *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying the

Rule 12(b)(6) standard to dismiss for failure to state a claim under § 1915(e)(2)(B)).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff's factual allegations "must be enough

to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  As Plaintiff

---

[7] The Court's preliminary review pursuant to 28 U.S.C. § 1915 does not determine whether the allegations in the Amended Complaint would survive a properly supported motion to dismiss filed by Defendant after service.  *See Richardson v. Cascade Skating Rink*, No. 19-8935, 2020 WL 7383188, at *2 (D.N.J. Dec. 16, 2020) ("[T]his Court recognizes '[a] § 1915(e) screening determination is a preliminary and interlocutory holding, subject to revision at any time prior to entry of final judgment.'" (quoting *Magruder v. Grafton Corr. Inst.*, No. 19-1980, 2020 WL 2814532, at *3 (N.D. Ohio Apr. 1, 2020))).

proceeds *pro se*, the Court holds her Amended Complaint to a less stringent standard than one drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, the Court need not "credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

## III.    ANALYSIS

For the reasons below, Plaintiff's FMLA claims and PWFA failure to accommodate claim survive this Court's screening process under 28 U.S.C. § 1915, and the Court will therefore permit those claims to **PROCEED**. The Court will **DISMISS** Plaintiff's other claims *without prejudice*.

### A.    Plaintiff's FMLA Claims

#### 1.    FMLA interference

The FMLA guarantees eligible employees the right to twelve workweeks of leave per twelve-month period to take care of a newborn. 29 U.S.C. § 2612(a)(1)(A). Accordingly, it is unlawful for an employer to interfere with, restrain, or deny an employee's exercise of their FMLA rights. 29 U.S.C. § 2615(a)(1). To plead an FMLA interference claim, a plaintiff must show that:

> (1) she was an eligible employee under the FMLA, (2) her employer was subject to the FMLA's requirements, (3) she was entitled to FMLA leave, (4) she gave notice to her employer of her intention to take FMLA leave, and (5) she was denied benefits to which she was entitled under the FMLA.

*Soutner v. Penn State Health*, 841 F. App'x 409, 413 (3d Cir. 2021) (citing *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014)).

By the time of her termination, Plaintiff was FMLA-eligible. To be considered "eligible," the employee must have been employed for at least twelve months by the employer and have worked for that employer for at least 1,250 hours in the preceding twelve months. 29 C.F.R. § 825.110(a). Plaintiff alleges that she met the minimum 1,250 hours necessary for FMLA

protection prior to taking medical leave.  FAC at 17.  Plaintiff began her maternity leave on November 17, 2023, less than eleven months into her employment.  Although Plaintiff was not FMLA-eligible at the start of her leave, the remaining portion of her employer-approved maternity leave became FMLA-eligible once she crossed the 12-month mark.  *See* 29 C.F.R. § 825.110(d) ("An employee may be on non-FMLA leave at the time he or she meets the 12-month eligibility requirement, and in that event, any portion of the leave taken for an FMLA-qualifying reason after the employee meets the eligibility requirement would be FMLA leave.").  In other words, even though Plaintiff was not eligible for FMLA-protected maternity leave at the commencement of her leave, the latter part of her employer-approved maternity leave would have become FMLA-eligible on January 7, 2024.  *See id.*

Centers Lab was also subject to the FMLA.  For an employer to be subject to the FMLA, the employer must employ at least fifty employees within seventy-five miles of a worksite.  *Id.* Plaintiff alleges that Centers Lab employed at least fifty employees working at that site.  FAC at 17.

Plaintiff was also entitled to take FMLA leave and provided notice.  *See* 29 U.S.C. § 2612(a)(1)(A).  She alleges that she gave birth and that Centers Lab approved her medical leave. *See* FAC at 18.  Such allegations are enough to raise the inference that she put Centers Lab on sufficient notice.  *See McCarron v. British Telecom*, No. 00-6123, 2002 WL 1832843, at *4 (E.D. Pa. Aug. 7, 2002) ("Although there is no precise definition as to what constitutes 'sufficient notice,' an employee is required to provide his employer with enough information for the employer to determine that the leave qualifies under the Act." (quoting *Price v. City of Fort Wayne*, 117 F.3d 1022, 1026 (7th Cir. 1997))).

Finally, Plaintiff was denied FMLA benefits when her employment was terminated prior to the end of her leave. *See* FAC at 18. Plaintiff therefore alleges sufficient facts to establish that Centers Lab interfered with the exercise of her FMLA rights. Accordingly, the Court will permit Plaintiff's FMLA interference claim to **PROCEED**.

### 2.    *FMLA retaliation*

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012) (citation modified).

Although Plaintiff's FMLA retaliation claim proceeds under the same set of facts as her interference claim, both claims may proceed at this time. *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) (holding that terminating an employee after a valid request for FMLA leave may constitute both FMLA interference and FMLA retaliation). And as previously discussed, Plaintiff adequately alleges facts suggesting that she invoked her right to FMLA leave. *See supra* Section III.A.1. Plaintiff also adequately states that she suffered an adverse employment action because she was terminated from her position. *See Budhum v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 257 (3d Cir. 2014) (defining an adverse employment action as one that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him of employment opportunities, or adversely affects his status as an employee").

Next, Plaintiff alleges facts suggesting that the adverse action was causally connected to her invocation of FMLA rights. "To demonstrate a causal connection, a plaintiff must generally establish either (1) an unusually suggestive temporal proximity between the protected activity and

the allegedly retaliatory action, or (2) a pattern of antagonism, coupled with timing to establish a causal link." *Id.* at 258 (citation modified).

"[T]he mere fact that [an] adverse employment action occurs after [protected conduct] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). Furthermore, "when a causal connection relies on temporal proximity alone, courts generally require that the termination occur within a few days of the protected activity." *Rooks v. Alloy Surfaces Co., Inc.*, No. 09-839, 2010 WL 2697304, at *2 (E.D. Pa. July 6, 2010) (citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989)); *Whitman v. Proconex, Inc.*, No. 08-2667, 2009 WL 141847, at *10–12 (E.D. Pa. Jan. 20, 2009) (finding that discharge within minutes of return from FMLA leave was "unduly suggestive" of a causal link); *Reinhart v. Mineral Techs. Inc.*, No. 05-4203, 2006 WL 44050695, at *10–11 (E.D. Pa. Nov. 27, 2006) (finding that the termination of an employee within twenty-four hours after returning from his FMLA leave met "the bare minimum of sufficiency to establish causation")).

For purposes of screening, the Court considers the duration of Plaintiff's leave to be a sufficiently suggestive period for retaliatory action. Though the date of Plaintiff's firing did not come within a few days of her taking leave or becoming FMLA-eligible, her termination did, in fact, occur while she was still engaging in a FMLA-protected activity. *See Erdman*, 582 F.3d at 509 (interpreting the requirement that an employee "take" FMLA leave to "connote invocation of FMLA rights"). If terminations immediately *after* returning from a protected activity are sufficiently proximate to the activity as to be unusually suggestive, it stands to reason, at least for purposes of screening Plaintiff's Amended Complaint, that terminations *during* a protected activity

8

may also satisfy this prong.  Accordingly, the Court will permit Plaintiff's FMLA retaliation claim to **PROCEED**.

### B.        Plaintiff's Discrimination Claims

#### 1.        General discrimination

Plaintiff brings gender discrimination claims under Title VII, which permits gender discrimination claims "on the basis of pregnancy, childbirth, or related medical conditions."  42 U.S.C. § 2000e(k).  Plaintiff also brings discrimination claims under the ADA.  42 U.S.C. § 12112. To plead a discrimination claim when there is no direct evidence of discrimination, whether under Title VII or under the ADA, plaintiffs must satisfy the three-step burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  To prevail on her discrimination claims without direct evidence of discrimination, Plaintiff must establish that (1) she was a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) members outside of the class were treated more favorably. *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (citing *McDonnell Douglas*, 411 U.S. at 802–03).

Plaintiff provides no direct evidence of discrimination based on her gender, pregnancy, or pregnancy-related conditions.  She must therefore allege facts that satisfy the *McDonnell Douglas* test.  *See Woods v. AstraZeneca Pharms., L.P.*, 659 F. Supp. 3d 512, 525–26 (M.D. Pa. 2023). Plaintiff's Amended Complaint, however, is devoid of any allegations that other similarly situated employees outside of any protected class were treated more favorably compared to her.  Without allegations about how similarly situated employees were treated, Plaintiff's allegations are insufficient to raise an inference of discrimination under *McDonnell Douglas*.  Plaintiff's

discrimination claims do not therefore survive screening under § 1915(e)(2)(B).  The Court will accordingly **DISMISS** Plaintiff's discrimination claims ***without prejudice***.

### 2.    *ADA failure to accommodate*

To plead a failure to accommodate claim under the ADA, a plaintiff must allege (1) she belongs to a protected class; (2) she sought accommodation; (3) the employer did not accommodate her; and (4) the employer accommodated others "similar in their ability or inability to work." *Pfiefer v. Bd. of Prob. and Parole*, 106 F.4th 270, 278 (3d Cir. 2024) (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 229 (2015)).

Here too, Plaintiff fails to allege any facts indicating that Centers Lab treated her worse compared to others similarly situated.  Because Plaintiff presents no facts on this issue, her Amended Complaint does not adequately set forth a failure to accommodate claim under the ADA. *See Brewer v. Key Bank, N.A.*, No. 23-747, 2024 WL 4026529, at *11 (Sept. 3, 2024).  The Court will therefore also **DISMISS** Plaintiff's ADA failure to accommodate claim ***without prejudice***.

### 3.    *PWFA failure to accommodate*

Plaintiff also brings claims under the PWFA, which requires covered employers to make "reasonable accommodations" for qualified pregnant employees with related medical conditions unless doing so would result in undue hardship.  42 U.S.C. § 2000gg-1(1).  To plead a failure to accommodate claim under the PWFA, Plaintiff must establish that "(1) she is a qualified individual; (2) the employer was aware of her limitation; and (3) the employer failed to reasonably accommodate the limitation."[8]  *Keiper*, 2024 WL 5119353, at *2.

---

[8] Since the PWFA became effective in June 2023, the caselaw interpreting it is minimal.  *See Trego v. Penske Logistics, LLC*, No. 24-460, 2026 WL 402501, at *7 (M.D. Tenn. Feb. 12, 2026) (citing *Payne v. W. Mich. Univ.*, No. 24-814, 2025 WL 3165213, at *7 (W.D. Mich. Nov. 13, 2025)).

10

Plaintiff has established that she was a qualified employee who, with or without reasonable accommodation, could perform the essential functions of her position. 42 U.S.C. § 2000gg(6). Plaintiff alleges that she "worked beyond regular shifts, including overtime" and had "worked more than 1,250 hours in the 12 months prior to her request for maternity leave." FAC at 5, 17.

Plaintiff alleges that her employer knew of her "pregnancy and medical condition," which Plaintiff elsewhere reports included "prenatal preeclampsia, high blood pressure, and other medical complications." *Id.* at 18. For purposes of screening, that is enough to establish that Centers Lab had notice of her medical condition. *See Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 380 (3d Cir. 2022) ("[T]o establish discrimination because of a disability, an employer must know of the disability.").

Finally, Plaintiff also alleges that she requested, and Centers Lab denied her, more frequent bathroom breaks and a modification of her schedule. This is also enough at the screening stage to allege a PWFA failure to accommodate claim. The Court will therefore permit Plaintiff's PWFA failure to accommodate claim to **PROCEED**.

---

District courts have noted that "[w]here the language of the PWFA mirrors that of the ADA or Title VII, the Court applies the legal standards governing ADA and Title VI," especially because these remedial statutes share a common goal of eliminating workplace discrimination." *U.S. Equal Emp. Opportunity Comm'n v. Sec. Assurance Mgmt., Inc.*, No. 25-181, 2025 WL 2911781, at *4 n.4 (D.D.C. Oct. 14, 2025). Applying this principle, some district courts have applied to the PWFA a standard that mirrors the failure to accommodate standard under the ADA. *See id.* However, some courts have omitted the requirement that plaintiffs show how others similarly situated were treated. *See, e.g.*, *Keiper v. CNN America, Inc.*, No. 24-875, 2024 WL 5119353, at *2 (E.D. Wis. Dec. 16, 2024) (first citing 42 U.S.C. § 2000gg-1(1); then citing *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013)); *contra Pfiefer*, 106 F.4th at 278 (quoting *Young*, 575 U.S. at 229). Nor does 42 U.S.C. § 2000gg-1 explicitly require comparison to similarly situated workers. For purposes of screening, this Court therefore applies only those elements set out in *Keiper* for evaluation of a PWFA failure to accommodate claim. Centers Lab may contest what standard applies under the PWFA in a properly briefed motion to dismiss.

11

*4.      Wrongful termination*

Plaintiff also brings a claim alleging race discrimination under 42 U.S.C. § 1981 based on her wrongful termination.[9]  § 1981 prohibits racial discrimination in making and enforcing contracts.  *See* 42 U.S.C. § 1981.  As was the case with her Complaint, Plaintiff fails to identify herself as a member of a racial minority.  Furthermore, Plaintiff has not alleged any facts that show that Centers Lab had the intent to discriminate against her on the basis of race.  *See Carter v. Bentley Motors Inc.*, 589 F. Supp. 3d 316, 323 (D.N.J. 2020) (dismissing the plaintiff's § 1981 claim for failure to demonstrate intent to discriminate on the basis of race).  Plaintiff's factual allegations lack the substance to sufficiently plead this claim.  The Court will therefore **DISMISS** Plaintiff's § 1981 claim ***without prejudice***.

**C.      Plaintiff's Hostile Work Environment Claim**

Plaintiff also fails to sufficiently plead her hostile work environment claim under Title VII. To successfully plead a hostile work environment claim, a plaintiff must allege (1) the employee suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the employee; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) with respect to a supervisor,

---

[9] As previously noted, *see supra* n.3, Plaintiff's Amended Complaint proceeds in multiple parts, FAC at 1–7, 17–19, 20–108.  Each of the first two parts describes the bases underlying Plaintiff's claims although the first part does not always present the same bases as the second.  The Court has nevertheless endeavored to read the Amended Complaint in harmony.  Accordingly, where it is unclear under what authority Plaintiff's claim is brought, the Court looks to the other section to see if Plaintiff provides any clarifying information.  Given that 42 U.S.C. § 1981 can be used as a statutory basis for a wrongful termination claim, *see Alcantara v. Aerotek, Inc.*, 765 F. App'x 692, 695–96 (3d Cir. 2019), the Court reads the wrongful termination claim asserted in both the first and second sections of the Amended Complaint to be based upon § 1981.  If the Court mistakes the bases for Plaintiff's claims, it is incumbent on the Plaintiff to amend her complaint to clearly indicate what her claims are and on which factual allegations they rely.  If Plaintiff submits a second amended complaint, she must provide a short and plain statement of her claims.

the existence of respondeat superior liability. *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)).

Although Plaintiff alleges she was denied schedule modifications, frequent restroom access, and clean clothing, such allegations do not suggest that she was discriminated against based on her sex (or any other protected characteristic). Consequently, Plaintiff does not sufficiently plead her hostile work environment claim. The Court will therefore **DISMISS** Plaintiff's hostile work environment claim *without prejudice*.

### D.    Plaintiff's Title VII Retaliation Claim

Plaintiff also fails to sufficiently plead that Centers Lab retaliated against her for submitting an internal complaint.[10] FAC at 18. Such retaliatory action is a potential violation of Title VII and 42 U.S.C. § 1981. 42 U.S.C. § 2000e-3(a). To plead a civil rights claim, however, Plaintiff must "stat[e] the conduct, time, place, and persons responsible." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). To plead a retaliation claim in particular, Plaintiff must also establish that "(1) [she] engaged in [protected activity] . . .; (2) the employer took an adverse employment action against [her]; and (3) there was a causal connection between [her] participation in the protected activity and the adverse employment action." *Castleberry v. STI Grp.*, 863 F.3d 259, 267 (3d Cir. 2017) (quoting *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006)).

Plaintiff's Amended Complaint again has done little to cure the insufficiencies in her Complaint. For example, Plaintiff still has not established that her termination was a result of the collective internal complaint. The Third Circuit has considered three months, standing alone, incapable of creating an inference of causation. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*,

---

[10] Plaintiff alleges that her former coworkers were retaliated against, but Plaintiff does not have standing to challenge the retaliatory acts that her former coworkers suffered.

503 F.3d 217, 233 (3d Cir. 2007). Given that Plaintiff's termination was seven months after the alleged collective internal complaint—and Plaintiff pleads no facts suggesting that her termination was connected to the collective internal complaint—the timing of her termination does not demonstrate a temporal connection between an adverse action and any potentially protected activity. Merely stating her termination during maternity leave was part of a retaliatory pattern of layoffs for those who participated in filing the collective internal complaint is too conclusory. *See Twombly*, 550 U.S. at 555. Thus, Plaintiff does not sufficiently plead a retaliation claim. Accordingly, the Court will **DISMISS** Plaintiff's retaliation claim ***without prejudice***.

E.      **Plaintiff's FLSA Claims**

Plaintiff also fails to sufficiently state an FLSA claim. Plaintiff alleges that Centers Lab failed to compensate her for hours worked in excess of forty hours. FAC at 3. "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Overtime in excess of forty hours is generally paid at one and one-half times the employee's regular wage. 29 U.S.C. § 207. To recover for unpaid overtime work under the FLSA, "an employee must prove that he worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)).

Plaintiff admits that she was compensated for hours worked beyond her regular shifts at a rate of $16.50 per hour. FAC at 6. Without knowing Plaintiff's regular hourly wage, however, the Court cannot determine whether Centers Lab's compensation rate of $16.50 per hour violated

14

the FLSA's mandate that Plaintiff be paid at one and one-half times her regular wage for overtime work.  *See* 29 U.S.C. § 207.

Plaintiff, however, additionally alleges that the $16.50 per hour compensation rate did not reflect what Centers Lab had promised.  FAC at 5.  Failure to comply with a promise, however, may provide grounds for a breach of contract claim, but it does not give rise to a claim under the FLSA.[11]  Thus, the Court will **DISMISS** Plaintiff's FLSA claims ***without prejudice***.

## IV.    CONCLUSION AND ORDER

Because Plaintiff sufficiently pleads her FMLA interference claim, FMLA retaliation claim, and PWFA failure to accommodate claim, the Court will permit the Amended Complaint to **PROCEED** on those grounds.  The Court will also **DISMISS** ***without prejudice*** Plaintiff's claims of general discrimination, failure to accommodate under the ADA, wrongful termination, hostile work environment, retaliation, and missing FLSA overtime compensation.  Plaintiff will be given **45 days** to submit a second proposed amended complaint to cure the deficiencies identified in this Memorandum Order.  Accordingly,

**IT IS** on this **13**th of May, 2026, for the foregoing reasons,

**ORDERED** that Plaintiff's FMLA interference claim may **PROCEED**; and it is further

**ORDERED** that Plaintiff's FMLA retaliation claim may **PROCEED**; and it is further

**ORDERED** that Plaintiff's PWFA failure to accommodate claim may **PROCEED**; and it is further

**ORDERED** that Plaintiff's remaining claims are **DISMISSED** ***without prejudice*** pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

---

[11] Plaintiff pleads no facts regarding the circumstances of this alleged promise.  The Court is therefore unable to construe Plaintiff's Amended Complaint to plausibly allege a breach of contract claim.

**ORDERED** that Plaintiff may file a proposed second amended complaint within **45 days** to cure the deficiencies identified in this Memorandum Order; and it is further

**ORDERED** that the Clerk of Court shall send Plaintiff a USM 285 form with instructions in order for Plaintiff to serve her Amended Complaint on Centers Lab; and it is finally

**ORDERED** that the Clerk of Court shall send a copy of this Memorandum Order to Plaintiff via regular mail.

Evelyn Padin, U.S.D.J.